Robert William GARDELS, Appellant,

v.

Lou V. BREWER, Warden, and The State of Iowa, Appellees.

No. 54765.

Supreme Court of Iowa.

Oct. 13, 1971.

Alanson K. Elgar, Mt. Pleasant, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., and Gary L. Wiegel, County Atty., Mt. Pleasant, for appellees.

REES, Justice.

This case involves an action brought by plaintiff under the provisions of chapter 663A, The Code, 1971, the Post Conviction Procedure statute, challenging his incarceration in the Iowa State Penitentiary at Fort Madison. The trial court denied relief. We affirm.

An extensive recital of the facts is deemed necessary in view of the involved and lengthy record before us. On November 14, 1966 petitioner escaped from the Henry County jail where he was being held awaiting preliminary hearing on a charge of aiding and abetting the larceny of a motor vehicle. In effecting escape, petitioner stole a second automobile in Mt. Pleasant, was subsequently arrested and appeared before the court on November 18, 1966, at which date counsel was appointed for him. The record indicates appointed counsel and petitioner had had opportunities to discuss the matter in detail, and when he appeared before the court, petitioner indicated his desire to enter a plea, and was advised by the court that he was entitled to time before being required to plead, but petitioner indicated he was then ready and prepared to plead, and entered a plea of guilty. Sentencing was set for November 28, 1966 on both the escape from jail charge and the motor vehicle larceny matter, and a pre-sentence investigation was ordered. He again appeared before the court, on November 28, 1966, but due to the fact that the pre-sentence investigation report had not been completed, sentencing was deferred until December 12, 1966, on which date the plaintiff again appeared in court. After an extensive colloquy between court and plaintiff, petitioner was sentenced to a term of not to exceed ten years on the motor vehicle larceny charge and for an indeterminate term of not to exceed one year on the jail escape charge, the sentences to run concurrently.

On March 9, 1969 petitioner was paroled from the institution to employment in Des Moines. The record indicates he violated the terms of his parole in several respects and also reflects the fact he left the state in violation of his parole agreement and went to the State of Montana, where in June he was arrested on a vagrancy charge and sentenced to 30 days in jail. He was then informed that he was wanted in Iowa. The record indicates the judge before whom he appeared was not a judge of a court of record. Counsel was appointed for him at that time, and the judge advised the petitioner he would have to again appear before he would be released to the Iowa authorities. His appointed counsel at that time apparently advised petitioner he could do nothing for him until the extradition papers from the State of Iowa were received in Montana.

The record indicates a contention on the part of the petitioner that he was never again taken before a judge, that he had no further services of an attorney, and that he remained in jail in Missoula, Montana, until sometime in September of 1969, when he was brought back to the penitentiary at Fort Madison. The record further indicates three orders for the revocation of petitioner's parole were issued by the parole board, one being dated June 14, 1969, one July 21, 1969, and the third August 6, 1969. The requisition for the rendition of petitioner from the State of Montana was made by the Governor of Iowa on August 12, 1969, and appears from the record to be in proper order. Attached to the requisition was an appointment of one Pruett as an agent empowered to return petitioner to Iowa. Also attached to the requisition were copies of the August 6 revocation order, a copy of the original information charging petitioner with escape from jail, and sentence thereon, a copy of the parole agreement signed by the petitioner and a copy of the order of revocation dated June 14, 1969.

The Governor of Montana issued his warrant on August 19, 1969 ordering the arrest of petitioner and further ordering him to be turned over to the officer authorized to return him to Iowa.

Petition for writ of habeas corpus was filed by petitioner on May 12, 1970, and on the following day the Honorable William S. Cahill, a judge of the First Judicial District, denied the petition, reciting in his order of denial that no jurisdictional defect was shown by plaintiff in his petition, and that he had not complied with the filing provisions of chapter 663, The Code, 1966. On May 18 following, petitioner filed a petition for writ of certiorari to review the action of Judge Cahill, which writ was denied by the Chief Justice of the Supreme Court, such denial being without prejudice to any action petitioner might bring under the provisions of chapter 663A, The Code, 1966. The provisions of chapter 663A became effective July 1, 1970 and on July 7, 1970 plaintiff filed his application pursuant to chapter 663A, and on the same date counsel was appointed to represent him in connection therewith. Hearing was subsequently had thereon, evidence taken, and the court entered its order denying the relief sought.

In his petition under the Uniform Post Conviction Procedure Act, chapter 663A, petitioner alleged: (1) he was denied counsel during police interrogation, (2) he was denied counsel during a critical stage of the proceedings, (3) he was denied counsel for complete appellate review, (4) he was returned unlawfully to the State of Iowa because of irregularities in the extradition procedures, and (5) that his parole was revoked unlawfully.

We conclude plaintiff's petition properly comes within the purview of chapter 663A, The Code, 1966, and was so treated by the trial court at the evidentiary hearing to pass upon the issues raised in his petition.

I. As above recited, petitioner was charged with breaking jail in violation of section 745.8, The Code, 1966 and with larceny of a motor vehicle in violation of section 321.82, The Code. On his first appearance before the court on November 18, 1966, in connection with the charges above mentioned, counsel was appointed, and petitioner indicated his desire at that time to enter a plea to the informations. In open court he stated that he had had an opportunity to discuss the matter of his plea with his counsel before that date, was then ready to plead and entered a plea of guilty. The chronology of the case is set out above.

■ The record is devoid of any indication the petitioner was at any time deprived of his right to counsel. He testified at the evidentiary hearing on the petition for post conviction review that he did not recall making any statement at any time to the police in connection with either charge, so that his claim of denial of right to counsel in that context is not established. We have made an exhaustive search of the lengthy record, and it reveals no stage at which the petitioner was denied counsel, and thus his contention in this regard is without merit.

■ II. Petitioner further urges he was deprived of his right to counsel for a complete appellate review. The record shows he was informed of his right to appeal and the right to counsel at public expense, and his contention in this regard presents nothing for review.

III. Petitioner next asserts his return to Iowa and subsequent imprisonment is unlawful because of irregularities in the extradition proceedings in the State of Montana.

Petitioner had been paroled in March of 1969, and in June of the same year was arrested in Missoula, Montana, under an assumed name on a vagrancy charge, and it was at that time learned he was wanted in Iowa for the violation of his parole. He was then taken before a judge, in all likelihood a justice of the peace, and sentenced to 30 days in jail on the vagrancy charge. Counsel was appointed for him prior to the imposition of sentence. The record shows plaintiff was returned to Iowa in September, 1969, without having had the further services of an attorney, and that he was

not taken before a court of record on the extradition proceedings as is required under the uniform act, section 759.10, The Code, 1966. The State of Montana has adopted the Uniform Criminal Extradition Act. The record indicates the Montana counsel appointed for him informed plaintiff he could do nothing for him until formal extradition papers arrived in Montana, and at the imposition of sentence on the vagrancy charge, the sentencing justice advised petitioner he would again appear before a court before he was returned to Iowa.

It is because of the foregoing claimed irregularities which petitioner contends renders his extradition and subsequent incarceration in the institution in Iowa unlawful.

■ The matter before us was brought under chapter 663A, The Code, and the spirit of the entire act requires us to examine the substance of the petition for any meritorious claims regardless of form. See State v. Mulqueen (Iowa 1971), 188 N.W.2d 360.

■ It is well established attacks on the irregularity of extradition proceedings must be made in the asylum state; in this instance, Montana. Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511–512, 96 L. Ed. 541; Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 228–229, 30 L.Ed. 421; Walden v. Mosley, · 312 F.Supp. 855, 861 (N.D. Miss.1970); People v. Klinger, 319 Ill. 275, 149 N.E. 799, 801; 31 Am.Jur.2d, Extradition, § 74, pp. 980–981.

■ A person in violation of a parole may be extradited. Wilkins v. Granrud, 178 N.W.2d 644, 647 (N.Dak., 1970); State ex rel. Westlund v. Nehls, 43 Wis.2d 328, 168 N.W.2d 863, 868–869; State ex rel. Stephenson v. Ryan, 235 Minn. 161, 50 N.W.2d 259, 265; Ex parte, Colcord, 49 S.Dak. 416, 207 N.W. 213, 214; 31 Am. Jur.2d, Extradition, § 20, pp. 937–938; 35 C.J.S. Extradition § 10(b)2, pp. 396–397; 78 A.L.R. 422–427. See also Uniform Criminal Extradition Act, section 759.23, The Code, 1971 (Rev.Code of Montana, 94–501–1 to 94–501–32.)

It has been uniformly held the manner in which a defendant is rendered before the court has no effect upon the court's jurisdiction over him. State v. Ross and Mann, 21 Iowa 467, 470–472; Frisbie v. Collins, *supra*; Ker v. Illinois, *supra*; Tedder v. Cox, 317 F.Supp. 33, 34 (W.D., Virginia 1970); People v. Pardo, 47 Ill.2d 420, 265 N.E.2d 656; State v. Losolla, 79 N.M. 296, 442 P.2d 786, 787–788; State v. Johnson 277 Minn. 230, 152 N.W.2d 768, 773–774; People v. Klinger, *supra*; 21 Am.Jur.2d, Criminal Law, § 381, p. 401; 35 C.J.S. Extradition § 22, p. 450. See also Fairman, Ker v. Illinois Revisited, 47 Am.Journal Int'l. Law, 678 (1953); Scott, Criminal Jurisdiction of a State over a Defendant Based upon Presence Secured by Force or Fraud, 37 Minn.Law Review 91 (1953); cf. Allen, Due Process and State Criminal Procedures: Another Look, 48 N.W.U. Law Rev. 16 (1953), and Note, 54 Iowa Law Rev. 497 (1968). Our purpose in considering the merits of a resistance to extradition is to comport with the spirit of chapter 663A, The Code, by disposing of all the issues raised in plaintiff's petition.

IV. Petitioner asserts his parole was unlawfully revoked, but does not specifically allege any defect in the manner of revocation. He questions the revocation by asserting: (1) the parole board was without jurisdiction to revoke the parole because of the irregularities in the extradition proceedings, or (2) the revocation was illegal for failing to provide notice to plaintiff and opportunity to contest the revocation at a hearing.

■ We see no distinction between fact situations where an individual is brought within the jurisdiction on revocation of parole, or situations in which a defendant is charged initially with crime and returned on extradition. Section 745.3, The Code, 1971, makes the violation of parole a separate offense, and provides that anyone

having been paroled from a penitentiary or reformatory and who thereafter departs without the written consent of the board of parole from the territory within which by the terms of his parole he is restricted, he shall be deemed to have escaped from custody within the meaning of section 745.1, The Code, and shall be punished as therein provided.

Section 247.28, The Code, 1971, also provides that a parolee who violates any of the terms of his parole, is guilty of a felony. State v. Watts (Iowa 1971), 186 N.W.2d 611. We perceive no reason why the fact plaintiff's parole was revoked and he was returned to the institution on the revocation rather than being charged with a new offense should in any manner reflect upon the regularity of the extradition proceedings. We have said there is no requirement for hearing on parole revocation. Curtis v. Bennett, 256 Iowa 1164, 131 N.W.2d 1, 3–4; cert. denied, 380 U.S. 958, 85 S.Ct. 1096, 13 L.Ed.2d 974. Section 247.11, The Code, in prescribing procedure for recommitment does not require hearing or notice, but simply provides a parole violator may be arrested upon the written order of the board of parole. We believe there is no conflict in procedure for parole revocation in Iowa, and the rationale in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336. We distinguish Mempa, *supra,* on the basis that in the State of Washington sentence is imposed after revocation and the defendant was not afforded benefit of counsel at the sentencing procedure.

In the matter before us, sentence was imposed prior to incarceration and long prior to plaintiff's parole, and counsel was present on behalf of the plaintiff and took part in the proceedings at the sentencing. Simply stated, under our revocation procedure in Iowa, the petitioner was not sentenced pursuant to revocation, but merely returned to custody to serve out the remainder of his original sentence. In

Rose v. Haskins, 388 F.2d 91 (6th Cir. 1968), the court construed a statute similar to our section 247.28, The Code, holding that in the revocation of a parole there was no constitutional requirement for a hearing thereon.

The record clearly indicates the petitioner here signed a parole agreement containing various conditions and terms which were to be complied with in order for him to remain on parole. See State v. Byrnes, 260 Iowa 765, 770, 150 N.W.2d 280, 283. The record further indicates the petitioner was aware of the terms of his parole, was in violation of the same, and that the parole was properly revoked by written order.

We have reviewed the record exhaustively and find: (1) petitioner was not denied counsel at any stage of the proceedings; (2) the manner in which the petitioner was returned to this state does not affect the jurisdiction of the Iowa court over him; and (3) petitioner's parole was legally and properly revoked. We therefore conclude no relief is available to the petitioner under chapter 663A, The Code, and the order and judgment of the trial court denying him relief is affirmed.

Affirmed.

All Justices concur, except BECKER and RAWLINGS, JJ., who dissent.

BECKER, Justice (dissenting).

I respectfully dissent.

I. I cannot concur with Division IV which re-affirms our prior holdings that it is constitutionally permissible to revoke a parole without notice or hearing. See dissent by Rawlings, J., in Cole v. Holliday, 171 N.W.2d 603, 609 (Iowa 1969).

II. The other problem inherent in this case is more difficult a solution. Under the Montana and Iowa law defendant (plaintiff here) was entitled to a hearing

and to counsel before extradition was complete.[1]

On the record as we now have it, the rights of the defendant were violated and in the violation thereof the law officers themselves broke the law.[2] In my view it will not do to say that this defendant must attack the irregularity of extradition proceedings in the asylum state. The peace officers of Montana turned his physical custody over to peace officers of Iowa and between the two groups of officers the defendant was taken out of Montana without an opportunity to be afforded a lawyer or a hearing.

The State takes the position that it does not make any difference how the person was returned to the State, legally or illegally, the fait accompli cannot be challenged even though illegal. This was the rationale of State v. Tonn, 195 Iowa 94, 191 N.W. 530 (1923), (illegally obtained evidence is nonetheless admissible in evidence). Finally the United States Supreme Court interfered and protected the rights of the accused in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (evidence obtained by unreasonable search and seizure is inadmissible against a criminal defendant and

this rule applies to the states). A like fate can (and should) befall this latest State contention if individual statutory and constitutional rights are consistently ignored.

In the context of this case I do not feel it is necessary to return the defendant to Montana to afford him his rights. However, I suggest that it is the duty of this court to plainly state that if such disregard of the Uniform Criminal Extradition Act is continued the court will interfere to protect the rights of the accused. In such cases it can and should order defendant returned to the state from which he has been illegally transported.

In conclusion I would order a revocation of parole hearing for this defendant and affirm in all other respects with the above noted caveat to the executive authorities of the State.

RAWLINGS, J., joins in this dissent.

MASON, Justice.

Although I still adhere to the position I took by joining Justice Rawlings' dissent in Cole v. Holliday, 171 N.W.2d 603, 609 (Iowa 1969), I feel bound by the majority opinion in that case and therefore concur.

1. "759.10. Testing legality of arrest. No person arrested upon such warrant shall be delivered over to the agent whom the Executive Authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state." (Uniform Criminal Extradition Act.)

2. "759.11. Penalty for wilful disobedience Any officer who shall deliver to the agent for extradition of the demanding state a person in his custody under the Governor's warrant, in wilful disobedience to the last section, shall be guilty of a misdemeanor and, on conviction, shall be fined not more than $100.00 or be imprisoned not more than thirty days." (Uniform Criminal Extradition Act.)